Henry Klippel and Audrey Klippel v. Commissioner.
Klippel v. Commissioner
Docket No. 1792-63
United States Tax Court
T.C. Memo 1964-188; 1964 Tax Ct. Memo LEXIS 149; 23 T.C.M. (CCH) 1106; T.C.M. (RIA) 64188; July 10, 1964
*149 Henry Klippel, pro se, 1 Longley Place, Huntington Station, N. Y. H. Morrison Johnston and W. T. Holloran, for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $408.60 in income tax and an addition to tax of $20.43 for 1959. The only adjustment which he made was the addition to reported income of $1,699.86 representing capital gain from the sale of an automobile. Findings of Fact The petitioners, husband and wife, filed a joint return for 1959 with the district director of internal revenue at Brooklyn, New York. They used a cash method. They had two children 7 and 9 years old in 1959. The first automobile owned by the petitioners was a 1951 Studebaker. They continued to own it until Audrey wrecked it in an accident and then sold it for $25 before June 1958. Henry bought a new 1957 Plymouth Belvedere two-door, hard-top automobile on or about August 1, 1957, somewhere on Long Island. He does not remember from whom he purchased the car. He did not trade in the Studebaker in the deal for the Plymouth but paid all cash, a part of which he borrowed from the Eastern National Bank. He gave that bank his *150 note for $2,112.01, which amount included "PRINCIPAL 1665 [*] INT OR DISC. 247.61 [*] INSURANCE 159.40". The bank record lists the purchase price of the car as $2,500. The Commissioner, in determining the deficiency, used $2,300 as the cost of the car but now raises the amount to $2,500. The record does not show that the original cost of the car to Henry exceeded $2,500. Henry went from New York to Clark Air Force Base in the Philippine Islands as a civilian employee in April 1958 and Audrey followed him there in June 1958. They used the 1957 Plymouth for family purposes. Audrey shipped it to the Phillippines shortly before she left New York in June 1958 and they continued to use it in the Philippines as their family automobile. They had an air-conditioning unit installed in the Plymouth when the car arrived in Manila. The cost was $400. About a month or two after the Plymouth arrived in Manila, Audrey, in attempting to put it in the carport at their home, ran it against a wall and damaged the right door and side of the car. The damage was repaired. Henry sold the Plymouth in the Philippines for 11,500 pesos which when converted into United States money netted him *151 $5,699.73. The sale was made on or about February 19, 1959. Henry at that time was taking 150 milligrams of tranquilizers at the Base Hospital, having just recovered from a partial nervous breakdown which he attributed to persecution at the Base. His recollection of events during that period is extremely hazy. He and his family left the Philippines in June 1959 after the children finished school for that year. The petitioners did not report on their 1959 income tax return any gain from the sale of the Plymouth car. The Commissioner determined a long term capital gain of $3,399.73 from the sale of the Plymouth and added 50% thereof, $1,699.86, to income. He also added 5% of the deficiency for negligence in failing to report the gain. The cost of the Plymouth for computing capital gain includes the $400 cost of the air-conditioning unit. The cost of shipping the car from New York to the Philippines was a personal family living expense and not a part of the cost of the car for federal income tax purposes. The cost of repairing the damage which Audrey did to the car in 1958 is not a part of the cost of the car for computing capital gain. The petitioners paid a broker 1,000 *152 pesos, equivalent to $500, for securing the bid which they accepted in selling the car. This amount enters into the computation of capital gain. Opinion MURDOCK, Judge: The petitioners argue that the Commissioner, in a so-called 30 day letter, offered to join with them in "an informal conference with an independent conferee"; they timely accepted that offer; the conference was never held; and therefore the subsequent notice of deficiency was "null and void". The petitioners do not point out how they would benefit if this argument were valid. However, they did not include any such error in their assignments of error; Henry admitted on cross examination that there was further correspondence between the petitioners and the Internal Revenue Service, beyond the "30 day letter" and the letter of "acceptance", pertaining to this subject; it is not clear that the conference was not held or, if not, why not; and the Court, for these and other reasons, will decide this case on its merits. The only material evidence offered by the petitioners to sustain their burden of proof on the merits in this case was the testimony of Henry in which he relied solely upon his memory. He said all of his *153 records on the subject had been lost and consequently he had to rely upon his memory, which he admitted was hazy at the time of the sale of the Plymouth. Audrey was unable to give competent testimony as to any item of cost or sales price. Henry testified that the basic cost of the car was $2,500, all of which he paid with money borrowed from Eastern National Bank, and he paid in addition $600 in cash for numerous accessories. The bank record shows, however, that the net amount available from the loan to apply on the purchase price was $1,665, not $2,500. Henry, thus, may be mistaken and the record does not justify a finding that the original cost exceeded $2,500. Henry would include the cost of shipping the car to Manila and the cost of repairs after an accident in the cost of the car for the purpose of computing capital gain from the sale. The car was used as a family car from August 1, 1957, when it was purchased, until February 19, 1959, when it was sold, a period of 18 1/2 months. The record does not show when or why he first tried to sell it. Henry was not well when the sale was made and the entire family returned to the United States as soon as the two children finished the *154 current school term. The record does not show that the shipping expense was other than a personal family expense. The repair cost was, of course, not a cost for capital gain purposes. It seems clear that an air-conditioning unit was placed in the car. Henry testified that this cost $400 and such as expenditure would add to the cost of the car for capital gain purposes, if, as seems unquestioned, the air-conditioner was a part of the asset sold. Henry testified that he had received offers of approximately $2,500 to $3,000 for the car, he thought it was worth more, "so we therefore contacted a broker we had been told about, and the broker was paid 1,000 pesos [$500] to get us a better offer." It is not argued that the broker did not obtain the offer accepted. Henry claims the car was sold for $4,250 but in view of his admitted "extremely hazy" memories of events of that period and a document which appears to be authentic, we have concluded that the net amount received from the sale was $5,699.73, as shown on the document. We have accepted as much of Henry's testimony from his memory as is not seriously challenged by admitted documentary evidence. Real doubts about his figures *155 leave his contention in these latter respects without the necessary proof. Finally we hold that the petitioners believed that they had no gain on the sale and they were not negligent under all of the circumstances, in failing to report the sale. Decision will be entered under Rule 50.